The opinion of the Court was delivered by
Duncan J.
The defendant in error, the plaintiff below, declared on a quantum valebat for goods sold and delivered. Issues were joined on the' pleas of nan assumpsit, payment, and the statute of limitations. He offered in evidence a certain book, as a book of original entries, with the proof, as stated in the bill of exceptions. This book was objected to by the defendants below, and was received in evidence as a book of original entries to charge the defendants, who excepted to the opinion of the Court. This book on inspection is not a book charging the defendants as debtor, nor importing any contract between the parties. That is not the object and design of the book. It is a book designed for other and different purposes.' It is a book containing the accounts of the manufacturers of iron employed by the plaintiff, for drawing the iron. It contains a statement of the disposition of the iron, to whom sold, and by whom sent. So far as respects the controversy between these parties, it is a book containing the monthly account of iron drawn by John Boen and his hands. The entries commence the 1st January, 1808, and end the 1st May, 1818 ; and it is evident these entries were made for the purpose of settling with Boen and his hands, for the price of drawing. On the 31st July, 1809, there is this entry, “ settled up to this, 391 tons 14 cwt. 1 qr. 12 lbs.” and on the* 11th May, 1815, “settled for drawing, 316 tons 8 lbs. 1 qr.” including the times in which, it is alleged,.the iron was' sold to Joshua Maylin, & Co. This is a book of original entries, so far as respects the plaintiff's workmen, Boen and others ; but is not, of itself, that book of entries of goods sold and delivered, which in Pennsylvania is received in evidence from necessity, on proof of the entries being made by the clerk of the party, or of his handwriting if dead, or out of the power of the Court, or proof by the party himself, in case the entry is in his handwriting. It is not a general book qf entries, but entries of a particular description, to enable the party to settle with his workmen, and on which he has settled with that class of persons, and their accounts closed. In the case of Sterrett’s executors v. Bull, 1 Binn. 234, the *409 same species df evidence had been admitted, and the judgment for that reason was reversed. The plaintiff gave in evidence a book, proved by him to be a book of original en- , . f . , ,, , . tries; and that which was called an entry, was an agreement written in the book, by which the subscribers promised to deliver to Sterrett the number of tons of pigs to their names respectively attached, under which was a schedule,presenting different columns, in which were written the day of the month, the quantity of pig iron delivered, and the signatures of the carters, with the names filled in by the clerk. Now this schedule contained every thing which is to be found in this entry; the quantity of iron, by whom to be delivered, and to whom sold, and the date. The entries here are not entries recording a sale and delivery of iron to the defendants, but the transactions between Boen and Old, not between Maylin and Old; not intended as a memorandum, entry, or record of sale and delivery of iron to the customers of Old, but to ascertain, the quantity of iron drawn by Boen and his hands, to enable Old to settle with them, and as such the entries have been used, and the accounts settled. It is difficult to believe, that there is not another book in which the iron delivered to Maylin is charged to him. The nature of the transaction, iron sold to so large an amount, could not depend solely on this book. But to many of the entries, there is added the letter E, indicating that an entry is made some where else. In many of the instances where 3£aylin's name is introduced, will be found the E. If there be these certain indicia, that this iron is entered in another book, that book should be produced, that the other party might have advantage of all the items therein. To give to a book containing entries of the transactions of a party with his own workmen, and evidently for the purpose of enabling him to settle with them, the character of an original book of entry of goods sold and delivered^ where the defendant’s name is incidentally introduced as explanatory of the transaction between the parties, and where he is not charged in any shape or form as a debtor, and to suffer it to go to the jury as evidence to charge the defendants to any amount, on the bare proof of the handwriting of the clerk, or proof by the party himself, that this was an original entryp would introduce evidence of a most dangerous nature, which the necessity of permitting that kind of testimony does not require, and would open a door for the commission of th® *410 greatest frauds. General rules of evidence are of the highest consequence in the administration of justice. On the rules of evidence rests the security of all property. Neces-gity has, in the case of books of entries <pf goods sold and delivered, caused a departure from the general rules. It has made the handwriting of a clerk — the oath of a party — evidence. But it has confined the exception strictly to goods sold and delivered, and work done. It is no evidence of money lent, nor of any collateral undertaking. The party to be charged must be the original debtor. Thus confirmed, I wish not to disturb it; further I would not extend it. It has gone far enough, in admitting the handwriting of a clerk, who although alive, is not in the power of the Court. For there is a wide difference in proving barely the handwriting of a witness, which attests only the signing, or sealing and delivering of an instrument, and evidence of the handwriting of a clerk to entries, which entries are used as evidence- of goods sold and delivered.
I by no means say, that this book is to be rejected on any evidence of corroborating facts. Circumstances may be proved. Other facts might be given in evidence, which might render this book proper and necessary evidence. It might form one link in the chain of facts and circumstances to prove a sale and delivery of the iron to the plaintiffs in error. All that is decided is, that under the proof given, the book and entries were not legal evidence.
/ There is a second bill of exceptions. This respects the evidence of set-off offered by the plaintiffs in error. This was most properly rejected. They had given no notice in writing of the intended set-off; and although ,a copy of the account intended to be set-off was demanded of the counsel, it was declined. The defendant in error, without a call for notice of the intended set-off, was entitled to notice of the matter intended to be defalked. Natural justice requires that he should have proper notice to meet it. The rules of practice declared it should not be received without such notice ; and when the plaintiffs in error declined to furnish the account, it would violate every principle of justice, all rules of law and equity, to suffer them to avail themselves of a matter, which was concealed from the party until the moment it was offered in evidence. The charge of the Court is filed of record, and to a part of this exception is taken. The *411 Court say, “ that even the defence set up, that the balance claimed has been paid, is an acknowledgment that it was once due ; and as the defendants have altogether failed to prove it, it would seem to follow, as a necessary conclusion, that it was still due ; but of this the jury will judge.” On the plea of non assumpsit every thing was put in issue. The defendant puts the plaintiff on proving the whole of his case, and entitles himself to give in evidence any thing which shews that no debt was due at the time of suit commenced, whether on account of the promise not having been made, or being originally void for want of a good and legal consideration, or that the demand has been since satisfied. The several picas are to be considered as distinct and independent, and each is to be proved as if it stood alone. They are not inconsistent, as non assumpsit and a tender as to part; because, in that case, if the general issue be found for the defendant, it will then appear on the record, that no debt is due, and yet the defendant admits that something is due. He can only plead non assutnpsit as to part, and tender as to the residue. But so consistent are the pleas of non assumpsit and payment, that on the general issue, which is non assumpsit, the defendant may give payment in evidence. The plea of payment alone admits the promise, and the burden of the proof on that issue, is cast on the defendant, and he begins and concludes. But this is not so in non assumpsit, and payment. Constant experience demonstrates that it is not so. It is almost the universal practice to put in both pleas, where the defendants intend to resist the existence of the demand at any time. But if this was an acknowledgment, it was an acknowledgment on record. It would be conclusive, and they would be estopped, as to the original cause of action, and called on to shew its discharge. It would not be an acknowledgment or confession in pais, of the verity of which the jury were to decide, but a confession on the record, on which the Court were to pronounce their judgment. But how does the case stand here ? The plaintiffs in error were precluded from proving a set-off, not on a principle respecting its truth, but from reasons arising from their own neglect, and, because the evidence of the existence of another debt due to them by the defendant in error is rejected. Therefore, as they set up this defalcation against the defendant’s demand, it is considered by the Court as an *412 acknowledgment that it once was due, and the defendant below, the plaintiff in error, failing in this defence, and not having shewn it was paid, it was left to the jury, whether the conclusion was not a necessary one, that it was still due. In this it appears to me there is manifest error. It tended to mislead the jury, by instructing them, that the defence set up, and its failure, was evidence of the original justice of the demand, and that it was still due. Whereas by the plea of non assumpsit, all was put in issue ; its existence and its amount: and the plea of payment being altogether consistent with the plea of non assumpsit, it was incumbent on the plaintiff below, to prove that issue, and under that plea, the defendant might prove a payment. If he failed in this, it afforded no evidence,' much less a necessary conclusion, that the plaintiff’s demand was just in its origin, and that it still remained due.
Judgment reversed, and a venire facias de novo awarded.