JAMES P. BROWNE, Appellant, *v.* PRUDDEN-WINSLOW
COMPANY, Respondent.

First Department, February 4, 1921.

Libel — privileged communication — letter by defendant to its
customers stating reason for discharging plaintiff qualifiedly
privileged — proof of actual malice necessary —" dishonest " as
used in communication means unfaithfulness.

Where an employee has been discharged or has severed his connection with
his employer, the employer has the right to notify his customers of the
cessation of the employment and to state his reasons therefor. Such
communication is qualifiedly privileged and so long as the employer has
reason to believe that the statements in his communication are true and
the language used is not so intemperate and malevolent as to show a
malicious intent to injure the employee, the employer cannot be held
liable in damages, even though the statements in the communication were
false, unless the plaintiff by extrinsic evidence proves actual malice.

The complaint was properly dismissed for it was proven by plaintiff's own
testimony that the defendant had reasonable grounds for believing the
statements made in the communication constituting the alleged libel,
that the plaintiff had been disloyal to the defendant's interests by
endeavoring to injure its business in relation to certain of its customers,
and that he had been repeatedly and willfully dishonest in these trans-
actions with the defendant.

The word " dishonest " as used in the communication did not refer to
money matters, but unfaithfulness to the defendant and abuse of the
relation of employer and employee by attempting to divert business from
the employer to a rival while being paid by the employer; such conduct
would be willful dishonesty in his transactions with the employer.

APPEAL by the plaintiff, James P. Browne, from a judgment
of the Supreme Court in favor of the defendant, entered in
the office of the clerk of the county of New York on the 14th
day of June, 1920, upon the dismissal of the complaint by
direction of the court at the close of the plaintiff's case, and
also from an order entered in said clerk's office on the 8th
day of June, 1920, denying plaintiff's motion for a reargument
of the motion to dismiss the complaint and to set aside the
direction dismissing the same and to grant a new trial upon
the exceptions taken by the plaintiff at the trial.

*Jacob H. Corn* of counsel [*Siegel & Corn,* attorneys], for the appellant.

*Franklin F. Russell* of counsel [*Isidor Beaudrias* with him on the brief], for the respondent.

Page, J.:

This is an action to recover damages for libel. The plaintiff was employed by the defendant as a traveling salesman having a certain specified territory. He was paid a salary and an allowance for traveling expenses. The complaint alleges the publication of the following libel, which by stipulation of the parties is conceded to have been mailed in due course to about 150 persons and firms in various lines of business related to the line of business of the defendant, all of whom were customers of the defendant and whose places of business were within the territory of the plaintiff:

" Announcement — Reference: James P. Browne.

" We wish to advise you that after March 3, 1917, James P. Browne will not be connected, in any way, with us, nor authorized to represent us in any way whatsoever. We have only recently received conclusive evidence that Mr. Browne has, while in our employ and accepting salary from us, been disloyal to our interests, by endeavoring to injure our business and our relations with certain of our customers. In addition to such disloyalty, he has been repeatedly and wilfully dishonest in his transactions with us. Accordingly, we feel that as Mr. Browne may have attempted to injure us in your estimation, we should advise you of the above facts and warn you that he has been discharged from our employment for cause. Regretting the necessity for prompting the sending of this letter and trusting that no dissatisfaction, which may have been occasioned on account of his previous connection with this Company, may affect unfavorably our future business relations with you, we beg to remain.

" Yours very truly,
" PRUDDEN-WINSLOW COMPANY."

The answer pleads justification and privileged communication. The only witness examined was the plaintiff, who

testified that he was sent to get information concerning the letting of a contract for sewers in Lyndhurst, N. J.; that he found out who was the lowest bidder and discovered that the person who had bid would assign his bid to one O'Neill, who was a tax commissioner; that he interviewed O'Neill and was referred by O'Neill to the firm of W. H. Wurdemann & Co. of Lyndhurst, a local dealer in sewer pipes, through whom O'Neill said that he would clear the transaction. The plaintiff reported to Mr. Winslow, the defendant's president, and Mr. Winslow took up the negotiation with Wurdemann & Co. and secured a tentative agreement that if the contract was signed and Wurdemann received the order through O'Neill, he would fill it with the defendant's sewer pipe. Mr. Winslow directed the plaintiff not to see any of the parties in regard to this contract and specifically not to see Mr. Wurdemann, informing plaintiff that he had the matter in charge. Plaintiff testified that notwithstanding this order he called a number of times on O'Neill, Wurdemann and a man by the name of McDermott, who was in some way, not disclosed by the evidence, interested in the contract, and that shortly before the first of March he introduced to Wurdemann a Mr. Hoover, who was a traveling salesman for the American Sewer Pipe Company, a competitor of the defendant, and admitted that Hoover desired to see Mr. Wurdemann in reference to the contract that was the subject of negotiation between Winslow and Wurdemann. Plaintiff also admitted that he had informed O'Neill, Wurdemann and McDermott that the defendant had treated him unfairly, and that he intended to sever his connection with the defendant. On March third the plaintiff demanded his weekly pay, and Mr. Winslow refused to pay him. Thereupon the plaintiff gave two weeks' written notice of a cancellation of his contract of employment. Mr. Winslow thereupon immediately ordered him out of the office, and the circular which is the subject of this action was then sent out to the customers of the defendant. The court at the conclusion of the plaintiff's case dismissed the complaint, holding as a matter of law that the communication was privileged and that the plaintiff had failed to prove malice in its publication. In my opinion the learned trial justice was entirely right. It is well settled that where an employee

has been discharged or severed his connection with the employer, the employer has the right to notify his customers of the cessation·of employment and to state his reasons therefor. In such a case the communication is qualifiedly privileged; that is, so long as the employer has reason to believe that the statements contained in his communication are true and the language used is not so intemperate and malevolent as to show a malicious intent to injure the employee, the employer cannot be held liable in damages, even though as a matter of fact the statements in the communication were false, unless the plaintiff by extrinsic evidence proves actual malice. (*Klinck* v. *Colby,* 46 N. Y. 427, 431; *McCarty* v. *Lambley,* 20 App. Div. 264, 267.) In the case under consideration, not alone did the plaintiff prove by his own testimony that the defendant had reasonable grounds to believe the statements made in the communication, that the plaintiff had been disloyal to its interests by endeavoring to injure its business in relation to certain of its customers, but that he had been repeatedly and willfully dishonest in these transactions with the defendant.

The plaintiff's counsel lays great stress upon the charge of dishonesty, claiming that it was intended thereby to charge that the plaintiff had been guilty of embezzlement and larceny. Taken in the context in which the word was used, it would not bear that construction. Unfaithfulness to his employer and abuse of the relation of.employer and employee by attempting to divert business from the employer to a rival while being paid by the employer would be willful dishonesty in his transactions with the employer, and it was in this sense that the word was used.

The judgment should be affirmed, with costs.

Clarke, P. J., Laughlin, Dowling and Greenbaum, JJ., concur.

Judgment affirmed, with costs.